Wm. F. Worthington and Anne Hicks *vs.* W. S. McPherson, *a. d. b. n. c. t. a.* of Lewis Neth.—*June*, 1847.

The testator devised all the rest of his estate to be sold, and the money arising therefrom to be invested and to be held for the use of his child. The rest of his estate, of whatsoever kind, after deducting his wife's dower and thirds, he gave to his child. By a codicil he declared that with respect to the estate, which by his will is given to his child, it was his desire that in the event of his dying in infancy, that the estate provided for be given to *W.* and *H.*, and in that event, to be equally divided among them. The child died several years after the father, in infancy. *Held*, that the property devised to the child was that which existed at the testator's death; the profits upon its investment constitute no part of that estate; these are the fruits of the devise, belong to the child, and do not pass under the codicil.

Appeal from the *Orphans* Court of *Anne Arundel* County.

The will of *Lewis Neth*, bearing date the 4th October, 1832, contains among others the following clauses, viz:

*Item.* All the rest of my real estate I desire may be sold, and I hereby authorize and appoint *Samuel Maynard* to make sale thereof, upon such terms as he may approve of, and also to execute deeds for the same when the purchase money is paid. The money therefrom arising to be invested by the said *Maynard* in some safe public stock or funds, and to be held for the use of my said child or children. *Item:* The rest of

my estate, of whatsoever kind, after deducting therefrom my wife's dower and thirds, I hereby give to such child or children.

On the 7th October, 1832, the testator added this codicil:

*Item:* With respect to the estate, which by my will is given to the child or children with which my wife may now be pregnant, it is my desire, that in the event of no such child being born, or of the said child or children dying in infancy, that the estate provided for them be given to *Mrs. Anne Hicks, Mr. Wm. F. Worthington,* and my relation, *John Scott;* and in the events aforesaid, I do devise the same to them, and to be equally divided among them.

The appellee by his final account, charged himself with a debt collected, and interest to the 16th December, 1835, $8162 22, and with further interest on the principal debt, $5915 00, from 16th December, 1835, to the 20th April, 1846, $3671 24; after sundry allowances, there remained in his hands, $10,283 13, of which $3494 38 was distributed to the widow of *L. N.*, leaving $6788 75 for distribution under the will.

On the 30th October, 1846, the Orphans court, upon application to distribute the balance, passed the following order:

The court being informed that *Lewis Neth,* the only son and residuary legatee in possession, of the said testator, hath lately died under the age of twenty-one years; do, upon consideration, award and determine that the personal representatives of the said deceased legatee, is entitled to so much of the said sum, as is formed of interest accrued since the death of the testator; and the original debt, with interest accrued up to the time of the death of the testator, belongs to the persons to whom the estate is bequeathed by the testator's codicil, on the event which has happened; and it appearing reasonable that the costs of collecting and administering said fund, should be paid by the parties interested therein, in proportion to their respective interests; and that the sum due at the time of the death of the testator, was . . . . $7038 37

And that the interest since accrued, to amount of      4795 09

Making, for principal and interest at the time of

payment thereof, . . . . $11,833 46

This court doth award and adjudge, that the balance distributable by the aforegoing account, be paid and retained by the said administrator, as follows:

To be retained by him, the said *William S. McPherson,* as administrator of the said legatee, *Lewis Neth,* deceased, . . . . . $2601 15

To be paid to the legatees over, named in the codicil, viz:

To *William F. Worthington,* . . . 1272 67⅔

To *William F. Worthington,* as executor of *John Scott,* . . . . . . 1272 67⅔

To *Anne Hicks,* . . . . . 1272 67⅔

To be retained by the said *William S. McPherson,* and accounted for by him as guardian of the deceased legatee, for costs already advanced by him as guardian, $464 59 less 92 02 369 57

$6788 75

The estate of the testator previously received by the administrator, having been retained by himself, as guardian to the deceased legatee. It is the opinion of this court, that he is accountable therefor to the administrator of the said deceased legatee, and is not to be charged therewith in this present account.

The parties who claimed under the codicil prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS and SPENCE, J.

By REVERDY JOHNSON for the appellant, and

By ALEXANDER and McMAHON for the appellee.

ARCHER, C. J., delivered the opinion of this court.

The will of *Lewis Neth* was dated on the 7th October, 1832. The testator died a few days after the execution of his will and codicil. At the time of the death of the testator, his wife

was pregnant, and in April, 1833, was delivered of a son. This son died in 1846.

The clauses of the will having reference to the question before us, will be found in the statement of this case.

The question presented for our consideration, is, whether the profits of the estate, devised contingently to the child, should, upon its death, pass to the personal representative of the child, or should pass over to those to whom the estate in remainder was limited?

The intention, it has been argued, is clearly evinced by the use of the word " estate" in the devise to the child, and to those in remainder; and it is urged that as the " *estate*" is left to the child, and the same word " *estate*" is used in describing what those in remainder should take; that if the child takes the property devised and the profits, that those in remainder should also take the property devised and the profits— to this the answer is apparent. The property devised to the child is the property as it exists at the time of the death of the testator. The profits constitute no part of such estate, but are fruits of the subject of the devise or bequest which spring up after the death of the testator, and which belong to the child in virtue of the devise of the property to it.

If this construction should prevail, although the testator manifestly intended a benefit to his child, it could get nothing. The profits having to pass over to those in remainder, the same could not be appropriated for the child. It is supposed, however, that the testator meant that what might be necessary for the child's support and maintenance might be appropriated. We perceive nothing in the will to indicate such an intention on the part of the testator.

The effect of such a construction would be to pass over the profits, though the child of the testator might leave children, such clearly could not have been his design.

Again, it has been argued that the testator did not mean to enlarge the bounty to his wife by any contingency which might occur; and that no construction should be given to the will which would have the effect on the death of the child to enable

her, as the representative of the child, to take the profits. She would not, on the death of the child, take from the testator, by the devise, but would take as heir to the infant devisee, and would therefore take nothing under the will; and there is certainly nothing on the face of the will to indicate that the profits of the estate should rather go to those in remainder than to the wife.

It has been further urged, that if no child had been born, the profits would have gone over to those to whom the estate was limited in remainder, in virtue of the word "estate," and that a different construction cannot be given to the words if a child should be born. If no child had been born, the profits would pass as the fruits of the estate devised on the failure of the contingency; but if the contingency contemplated occurred, then the estate devised rested in the child, and the profits would belong to the child.

There is nothing therefore in the terms of the will to indicate an intention on the part of the testator to devise to the child, on the event of its dying under twenty-one years, only so much of the profits as might be necessary for the maintenance of the child.

The authorities cited clearly demonstrate that the estate left to the unborn child, became on the birth of the child, by the terms of the will, a vested estate, which carries the profits, and there is no intention discoverable from the will to defeat the rule of law. We need not comment on the authorities cited; for it was conceded in the argument, that they established the principle contended for by the appellee; but it was insisted, that the profits should not pass in a case, where the intention was clear, to the contrary; and that the legal intent ought to yield to the actual intent. We have endeavored to show that the actual intent does not differ from the legal intent.

It has been further argued, that all the profits of the estate, arising between the death of the testator, and the birth of the infant, should pass over to those in remainder. But we feel satisfied that such profits ought to be allowed to accumulate for the benefit of the child.

**DECREE AFFIRMED WITH COSTS.**