## STATE OF MARYLAND *vs.* THE MAYOR and CITY COUNCIL OF BALTIMORE, and others.

Where the *State* and *other parties* are creditors under the *same bond* of the *same party*, who has conveyed his property by a deed of trust, to indemnify his *sureties* on the bond, the State, by virtue of its *prerogative*, is entitled to priority of payment out of the proceeds of the property sold by the trustee in the deed under the direction of a court of equity.

APPEAL from the Circuit Court for Baltimore city.

This appeal was taken from an order of the court below, (KREBS, J.,) dismissing the petition of the State, filed in the case of *Elizabeth Smith vs. John S. Gittings, and others,* pending in that court, in which certain property of Lambert S. Norwood, late clerk of the court of Common Pleas, conveyed to John S. Gittings, in trust, to indemnify the sureties upon his official bond as clerk, had been sold and the proceeds brought into court for distribution. This petition claimed for the State the entire balance of the fund in the hands of the trustee, amounting to $8097.73, in part payment of two judgments, one for $2992.42, and the other for $14,684.67, recovered by the State upon the bonds of Norwood, as clerk. This claim was resisted by the Mayor and City Council of Baltimore, who alleged, that Norwood was indebted to the city of Baltimore in the sum of $18,000, for which they claimed that this fund was partially responsible, and for which they had instituted suits upon Norwood's bond. The facts of the case are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Chas. J. M. Gwinn* for the State, argued:

1st. That the court below erred in dismissing the petition of the State, upon the ground that the city had brought suit on the bond of 1851, because the deed of trust executed by Norwood to Gittings, in September 1853, was made to secure the sureties upon the bond of June 1853, and the city had no in-

terest whatever, arising out of the bond of 1851, in the distribution of the fund held by the trustee under this deed, made to secure the sureties on the bond of 1853.

2nd. That the court erred in dismissing this petition upon the ground that suit had been entered in the name of the State for the use of the city, because it was apparent to the court from the copy of the bond filed in the case, and referred to in the answer of the city to the State's petition, that the city had no claim, either at law or in equity, against Norwood, which they could successfully prosecute, for the reason that the bond of 1853 *was not stamped*, and, therefore, no recovery could be had upon it by a suit in the name of the State for the use of the city. 9 *Gill*, 105, *State vs. Milburn*. It is submitted, that a court of equity cannot proceed upon the hypothesis that there is a contest at law in regard to the liability of a party upon a bond, when the bond in proof before the court discloses, by reason of its want of a stamp, that it cannot be enforced by the city claiming under it, either at law or in equity. For an analogy, see *Owens vs. Collinson*, 3 *G. & J.*, 25. The city ought only successfully to have resisted the State's petition in a case where its equitable claim to the action of the court was founded upon the theory, that it had a *prima facie* case at law. But where a court of equity perceives that its jurisdiction is invoked in aid of a proceeding at law, and the facts, shown as the basis of such prayer, demonstrate conclusively that there is no legal right in the party claiming such interference, it is a manifest denial of equity to all other persons interested, to consider such application, or to act with reference to it in any manner.

3rd. That the court erred in its action, because the city, having a remedy at law upon the bond of 1853, if any legal rights under this bond were possessed by the city, should have been remitted to the pursuit of such legal rights by the court, and should not have been received as a party to or considered in a proceeding which was for the benefit of the *cestui que trusts* of the deed of September 1853, against the will of all or any of those *cestui que trusts*.

4th. The proceeding in the court was for the protection of

64    v.10

those who claimed rights in the property conveyed by Norwood to Gittings, and for the safety of Gittings, as trustee in administering his trust; and the court, in ordering the administration of the trust, ought to have followed that priority among those claiming an interest in the fund, which is recognised by the law. 1 *Story's Eq.*, sec., 553. And for this reason, if it were conceded, for the sake of the argument, that the city had any rights under the bond of 1853, its claim could not interfere with the right of the State to be first paid the debt due it, which had been sued for on this bond, and for which judgment had been recovered. The claim of the State was a lien upon the real estate of Norwood, in the hands of Gittings as trustee, and upon the proceeds of that estate in his hands: *(Act of* 1778, *ch.* 9, *sec.* 6; 1 *Bland,* 443, *Jones vs. Jones; Ibid,* 503, *Hodges vs. Mullikin;* 1 *H. & J.,* 546, *Davidson vs. Clayland;)* and the State was entitled to priority of payment by reason of such lien. The act of 1778, awards the priority to the State from the date of suit, except as against such liens as existed prior to suit brought by the State, and it is difficult to see why the claim of the city which was in no form a lien, either before the commencement of the suit brought by the State, or at the commencement of that brought in the name of the State for the use of the city, and for which no judgment had been recovered, could be set up by the court as entitled to be considered in the application of the fund, which was subject to the court's order, to the partial liquidation of the judgment obtained by the State.

5th. The court below was bound to recognise the claim of the State to priority in payment, when the lien of the State, prior to the claim of the city, was apparent in the cause. The prior right of the State to payment did not depend on the fact *that the suit was on a bond made to the State,* but on the fact recognised in the act of 1778, *that it was for money due the State.* The claim of the city, if it had any upon this bond, did not derive any preference from the character of the *bond,* but remained a private claim which relied upon the bond as an ordinary cause of action. Nor was there any more force in the reason given in the order appealed from, that the safety

of the trustee forbade the exercise of this legitimate authority of the court below. The trustee would have been as safe in paying the judgment claim of the State, as in paying under the order of the court any lien for materials furnished for the house of Norwood, which was conveyed to Gittings, as trustee. The claim of the State was as perfect to the fund, in preference to the alleged claim of the city, as was the right of the material men to the claim of the State before suit brought by the State.

6th. The court below erred in dismissing this petition, because it was in exact accordance with the deed of trust directing the property to be applied, to save harmless the sureties on the bond of 1853, and these sureties can only be saved harmless by appropriating the money derived from the proceeds of the property so conveyed and in court, to the satisfaction of liens thereon in their proper order, which order would apply the fund now in hand to the partial payment of the judgments of the State. If this court should be of opinion that, because of the transfer of all Norwood's property to Gittings as trustee, and the subsequent administration of the fund thus acquired by the court below, the State was left remediless at law, to enforce either of its judgments, but that the proceeds in the hands of the trustee, are, for the reasons set forth, applicable to both judgments because of the priority of the State's claim, this court, for full relief, on hearing this appeal, ought to pass a decree, directing the court below to order payment by the trustee, out of the fund in his hands, of the first judgment in full, and the balance of the fund to the partial payment of the second judgment. Or if this court should be of opinion that the fund ought to be applied, under the deed of 1853, to the relief of the sureties, who are *cestui que trusts* under that deed, then it ought to order the court below to direct payment, by the trustee, of the sum ascertained by the Auditor's account to be in his hands for distribution, in partial payment of the judgment for $14,684.67, recovered by the State on the bond of June 1853.

*Grafton L. Dulany* for the City of Baltimore.

The answer, or rather the petition, of the Mayor and City Council of Baltimore, prays that the city may be put upon an equality, as the creditor of Norwood, in the distribution of the fund arising from the sale of property, conveyed by him in trust to Gittings, with the State. The State, by its petition claims, that this fund should be applied primarily to the discharge of *its* debt, to the *exclusion of all others*, and for this *pretension* asserts its *prerogative right* and also its *statutory preference*, under the act of 1778, ch. 9, sec. 6. Assuming that the State and city are both creditors of Norwood, and also that each has an equal claim on his sureties, and that his deed to Gittings, was designed to indemnify his sureties against all, damage they might sustain from the demands of the one as well as the other, the claim of the State to take the whole fund in the hands of the trustee, in satisfaction of its entire debt, to the exclusion of all participation in the same fund by the city, has no foundation in any principle either of law or equity.

It is admitted, that if the State had commenced suit against Norwood, *before* his deed to Gittings, it would have had the priority and preference, under the act of 1778, in the payment of its debt. But the deed was executed on the 26th of September 1853, and no action was instituted against Norwood until the 7th of January 1854. Now at the time of the institution of the suit by the State, Norwood had no property, at least none which contributed to any portion of the fund now in court for distribution, because previously to that period, by a good and valid deed, founded upon a valuable and meritorious consideration, he had conveyed it all away. The preference of the State must have a legal existence. It can otherwise have none in equity, for there *"equality is equity,"* a principle antagonistic to the State's claim. Here there can be no *legal* priority, since, by the words of the act of 1778, it could only attach to the property belonging to the debtor, on the day of the institution of the suit, but in this case no such preference could attach, for on that day the debtor had no property, having previously transferred it for the benefit of his

State vs. Mayor & C. C. of Balto., et al.

sureties, which has been decided to be a valuable consideration. It is said, in the case of the *State vs. The Bank of Maryland*, 6 *G. & J.*, 217, a deed made by an individual debtor, capable of taking the benefit of the insolvent laws, to a creditor or a surety, might be valid and effectual to pass the property, and if so, why, in the present instance, did not the property pass to the trustee, by the deed of September 1853? And if it did pass, still to allow a preference to the State, would be to attach the right of priority, not to the property of the debtor but to that of other persons. It is no answer to say, that if preference be allowed to the State, under the circumstances of the case, the sureties will be protected as fully, as by any other mode of distribution of the fund, for still the legal ingredient, essential to the existence of a right of preference is wanting, viz: that the property at the time of the institution of the suit, must have belonged to the debtor. Nor will equity lay hold of any circumstances to create a preference where none exists, but in this respect reluctantly follows the law, and allows it, when legal, contrary to its own favorite maxim that *equality is equity*. Upon this question of preference, I rely upon the case in 6 *G. & J.*, 205, above cited, as conclusively establishing the right of the city, to participate with the State in the distribution of the fund in the hands of the trustee.

As for the objection, that the city had no claim at all because of the omission of the *stamp* upon the bond, it is unnecessary to inquire how far that would, at any time, have been requisite, since the act of 1856, ch. 352, makes all bills, notes, or *bonds*, drawn or executed previous to the act, as valid in law as though the stamp act had never been passed. This is a public law to which obedience is due, which the court will notice though not in the record, and which will avail to insure the defeat of the objection to the bond for want of a stamp. 1 *Cranch.*, 110, *United States vs. Schooner Peggy*.

ECCLESTON, J., delivered the opinion of this court.

Lambert S. Norwood having been elected clerk of the Court of Common Pleas for the city of Baltimore, in November

1851, gave bond to the State of Maryland, on the 29th of that month, in the penalty of £5000, for the faithful performance of the duties of his office.   On this bond Elizabeth Smith and J. Marbury Turner were sureties.   Under the act of 1853, ch. 409, Norwood, as clerk, gave a new bond to the State, on the 29th of June, in the same year, in the penalty of $50.000, on which Elizabeth Smith, J. Marbury Turner and J. Wesley Watkins, became sureties.

On the 26th of September 1853, Norwood executed a deed of trust to John S. Gittings, conveying a leasehold property therein described, and "all the real and personal estate which Norwood then possessed, and all *choses in action*, and all his rights, credits and effects, of whatsoever kind they might consist, and all his estate in expectancy, reversion and remainder."   After reciting that the bond for $50.000 had been given, it is stated in the deed to be  the design of the grantor, "more effectually to secure his said sureties on said bond, from any loss that might possibly occur from being on said bond." And the trust, as declared, gives  to the trustee authority "to sell and dispose of all property, real and personal, on such terms and in such manner as may be legal and most conducive to the interests of those interested in the execution of this trust, and to collect and reduce into possession all *choses in action*, rights and credits, and the proceeds thereof to apply to pay any loss or losses that the aforesaid sureties on the bon d of the said Lambert S. Norwood may sustain, if such there be; or in case of any such  loss being likely to occur, then to make such other disposition of the property, as in his judgment may be deemed best, to indemnify said sureties from any loss whatever."

On the 13th of November 1853, Elizabeth Smith, apprehending loss to herself and her co-sureties, exhibited her bill of complaint in the Circuit Court for  Baltimore City.   The object and design of which bill was, to get a  decree for the sale of the leasehold property, or house and  lot mentioned in the said deed, and all the other property thereby conveyed; and also that the court should take cognizance of the trust created by the deed, so that the same might be administered

under the direction of the court, for the benefit of all who might be interested therein. The bill likewise contained a prayer for general relief. John S. Gittings, John W. Watkins, J. Marbury Turner, Lambert S. Norwood and others, were made defendants; all of whom consented, by their answers, that a decree for a sale should pass as prayed. Gittings, Watkins, Turner and Norwood, all admitting the facts stated in the bill to be true.

The court passed a decree, on the 27th of December 1853, for a sale as prayed, appointing John S. Gittings, trustee, to make the same, and directing him to bring into court the money arising on such sale, and the bonds or notes taken for the same, to be disposed of under the directions of the court. It was also ordered and decreed, that the said John S. Gittings should, in all things, proceed and act under the directions of the court, in the execution of the trust reposed in him by the deed from Norwood. The decree also authorised Gittings to apply for directions, from time to time, and reserved to the court the right to pass such orders and decrees respecting the trust, as might seem advisable and proper for the administration thereof, and the protection of the trustee. The decree, likewise, provided, that the parties, or any of them, might apply for such further decrees, or orders and directions, as might seem to them proper, reserving the right to the court to pass such as might seem necessary.

Under this decree, after giving bond as directed by it, Gittings, as trustee, made the sale of the leasehold property on the 18th of February 1854, which was reported by him, and on the 19th of May following the same was ratified.

In reporting the sale he further reported, that he had received from Lambert S. Norwood the sum of $6506.34, to be applied by the trustee in accordance with the deed of trust filed in the cause; and the trustee prayed that the same might be distributed, under the directions of the court, in like manner as the proceeds of the sale of the leasehold estate were to be, or otherwise as parties entitled thereto might respectively establish their claims thereto.

The auditor made a report, including therein the amount for

which the leasehold estate was sold, and likewise the sum of $6506.34, received by the trustee from Norwood; from which report it appeared, that after allowing costs, expenses and claims, entitled to preference, there remained a balance of $8097.73, subject to be disposed of by the court's direction. This report was made on the 13th of June 1854, and was ratified on the 30th of the same month.

On the 4th of January 1854, the State of Maryland instituted suits in the Superior Court for Baltimore City, upon the two bonds given by Norwood. And on the 29th of May following, a judgment, by confession, was entered in each case; that on the first bond being for $2992.42, and that on the other for $14,684.67, with interest, from the 1st of December 1853, upon the principal of each judgment.

The State filed a petition in the circuit court, on the 13th of June 1854, in the case of *Elizabeth Smith against John S. Gittings, Lambert S. Norwood, and Others,* claiming any balance of the trust fund, remaining undisposed of, after the payment of any liens existing upon the leasehold property, prior to the institution of suits by the State.

On the 13th of June 1854, an order was passed, "That the matter of the within petition be set down for hearing on Monday the 20th inst., provided a copy of this order, and the said petition, be served on the solicitors for plaintiff and defendants, on or before the 16th inst."

Within due time, the solicitors of the respective parties admitted notice of the order and petition.

J. M. Turner filed an answer to this petition, in which he admits the matters and things charged therein, to be true, as to the indebtedness of Norwood to the State, and submits to such decree in the premises as may be right.

Elizabeth Smith, in her answer, says she believes the facts stated in the petition to be true, as to the bonds and judgments, but she does not know whether the amounts therein stated to be due on the several bonds are the true amounts or not, "nor is she advised that she is interested, in this case, in ascertaining whether they are correct or not; and she is perfectly willing that the funds now (then) in court, or to be brought

into court, or in the hands of the trustee, or to be in his hands, should be applied as prayed." She further answers: "But this respondent has been informed and believes, that the said Lambert S. Norwood is charged, by the Mayor and City Council of Baltimore, with a default in the collection of some of the revenues of the city, which they claim to hold his bonds responsible for, and she avers that the said Mayor and City Council are interested in the disposition of the said balance, and she prays that they may have an opportunity of claiming the said balance, before it shall have been acted upon" by the court.

In the answer of John S. Gittings, he says, his report will disclose the amount of money then in his hands, and the amount of the proceeds of the sale of Norwood's house, for which he is willing to account when the same shall have been received, but he does not admit that he has received the whole thereof. He admits the other facts stated in the petition, but further answering, "says, he has been informed and believes, that the Mayor and City Council of Baltimore claim the said balance, under the said bonds, for defalcations of the said Norwood, in making collections for them while clerk as aforesaid, and he therefore prays, before the distribution of the said balance, that notice may be given to the said Mayor and City Council, so that they may have an opportunity of setting up their claim in this case, and having the same adjudicated."

The court passed an order directing notice to be given to the Mayor and City Council; and on the 30th of June 1854, they filed what they called an answer to the State's petition, but which, with as much propriety, might be called a petition. In this they set out an alleged indebtedness to them, on the part of Norwood, as clerk, for moneys received by him for them, amounting to $18,000, for which they claimed the fund in court was partially responsible; in which answer they asked to be made parties to the suit, and that their claim might be audited, and distribution made to them upon equal terms with other creditors. They referred to both bonds, but without specifying the nature or amount of the claim under each of them; and filed with their answer an account marked "Exhibit Y," which is as follows:

65    v.10

"Statement of account.—Money due by Lambert S. Norwood, late clerk of the Court of Common Pleas, to the Mayor and City Council of Baltimore:

To ordinary licenses under the act of 1782, received by him, as appears by the books in the office of the register of the city and in the Court of Common Pleas, - - - - $15,009 88

To jail fees under the act of 1827, - - - 1985 08

_____

$16,994 96

Suits are now pending in the Superior Court to recover the above amounts."

With regard to the suits just mentioned, the following admission appears in the record: "It is admitted that a suit was entered in the Superior Court of Baltimore city, in the name of the State use of the Mayor and City Council, vs. Norwood and others, and a suit in the name of the Mayor and City Council of Baltimore, vs. Norwood and others, on his bonds as clerk of the Court of Common Pleas, for Baltimore city, at the May term 1854, and are on the trial calendar, for this term, (September 1854,) in said court." The record does not show when or how those suits were terminated.

Subsequently to the filing of the answer and claim of the Mayor and City Council, J. M. Turner filed a further answer denying their right to be made parties, and also insisting that they had no claim, whatever, upon the trust fund.

The circuit court passed an order dismissing the petition of the State, from which this appeal is taken.

The order is in the following language:

"The petition of the State of Maryland, filed in this case, praying that an order may be passed to authorize the payment to the State, by the trustee, in the petition mentioned, of the fund now in his hands, after certain payments therein mentioned are made, having been considered, and it appearing to the court that certain suits are now pending on the bonds filed in this case against the principal and sureties in behalf of the Mayor and City Council of Baltimore, to recover certain sums of money for which it is alleged said sureties are liable to said city on said bonds, and the court being of opinion that it should

pass no order such as is prayed in said petition, under which the said fund would pass from the hands of the trustee pending the trial of said cases, and it is ordered and adjudged, this second day of December 1854, that the said petition be dismissed with costs."

The deed was designed to secure the sureties in the second bond, and as the claim of the State under that bond, and the judgment upon it, amounts to more than the balance of $8097.73 of the trust fund, subject to the court's order, it is certain the State can have no title to any part of that balance by virtue of any claim under the first bond. So likewise no responsibility of Norwood and his sureties, to the Mayor and City Council, under the first bond, (if any exists,) can give them a claim upon this balance of the fund.

If it should be conceded that the Mayor and City Council have a claim against Norwood and his sureties, under his second bond as clerk, on account of moneys collected by him for them, still the State's claim under that bond is entitled to such a preference as will exclude the city from any participation in the trust fund.

We need not inquire, whether the deed of trust prevented the suits instituted by the State from creating a lien upon the property conveyed by it; for, without any *lien,* the State may be entitled to a priority or preference in payment, in such a case as this, according to the principle recognized in *Smith, et al., vs. The State,* in 5 *Gill,* 51. There the court say: "The authorities, cited by the appellant proved that in such a case as the present, the State has no lien. None is claimed. A priority of payment over other debts, they also not being liens, is a very different thing; and we think a prerogative of the State."

Although in the *State vs. The Bank of Maryland,* 6 *G. & J.,* 205, the *preference* claimed by the State was defeated, by reason of the deed of trust, it does not necessarily follow that the result must be the same here. That case is very different from this. There the *cestui que trusts,* under the deed, were creditors, generally, of the bank; and it did not appear that such creditors, or any of them, were debtors to

the State, as sureties for the bank, or debtors to the State in any other respect, and as such, having or claiming an interest in the property transferred for their use, by the deed, or in the proceeds thereof.

Here the *cestui que trusts,* who have any interest in the fund now in controversy, are debtors to the State, and are claimed to be debtors to the city also, and with reference to the question now before us, must be so considered, for otherwise there is an end of the city's claim by the terms of the deed itself, without a necessity for the State to rely upon the doctrine of preference. Both creditors are therefore claiming through the grantor in the deed, and through his sureties the *cestui que trust,* in the deed; and under the same bond.

If, in view of the facts, irrespective of the State's prerogative of priority, the city would have a claim upon the fund, the State would certainly have one quite equal in grade to that of the city. This being true, then if the State's prerogative is taken into consideration, the priority given by it must exclude the city, where there is not enough to overpay the State. And as the present fund is not sufficient to pay the judgment of the State upon the last bond, the Mayor and City Council can have no right to a portion of the balance in dispute.

The judgment of the State shows the amount recovered therein under the second bond; and the right of the State to have the trust fund applied toward the payment of its claim, has not been denied by the grantor in the deed of trust, by the trustee, or by either of the *cestui que trusts,* except in so far as the answers of John S. Gittings and Elizabeth Smith, make reference to an alleged claim on the part of the Mayor and City Council, and suggest the propriety of their being heard, so that their claim might be presented and adjudicated before the fund should be disposed of by the court.

They had an opportunity of being heard, and they did exhibit their claim, which, in our opinion, does not entitle them, in opposition to the State, to participate in the disputed fund; which claim, so exhibited, on its face shows that suits to recover the same were pending in the Superior Court, and these suits are, evidently, the same to which reference is made in the order dismissing the State's petition.

Believing, as we do, that the claim on which these suits were based cannot entitle the city to any portion of this fund, but that the State should have the whole, the order dismissing the petition must be considered erroneous. We will therefore pass a decree reversing the decision below, and ordering the costs in both courts, to be paid out of the balance of said fund, and the residue thereof to be paid to the State, in part payment of its judgment on the second bond.

*Order reversed and a final decree passed.*