CAHN *et al. vs.* WRIGHT, comptroller-general.

1. The comptroller-general's execution against a defaulting tax-collector and his sureties, is an execution for taxes in the true intent and meaning of the constitutions of 1868 and 1877, and may be enforced against personalty set apart and exempt from ordinary judgments, executions and decrees, in possession of the said collector or his sureties. The case in 60 *Ga.*, 76, reviewed and reaffirmed.

2. Therefore, where said execution was levied upon a surety's personalty, and the money raised from its sale was in court for distribution, and the wife of the surety, he refusing, had applied to have the same exempted, and the case was pending on appeal from the ordinary, and the comptroller-general ruled the sheriff for the money—the wife being made a party, and the court ordered that the money be paid to the state :

*Held*, that the court ruled correctly.

Tax. Homestead. Principal and surety. Before Judge HILLYER. Fulton Superior Court. March Term 1880.

E. Cahn was one of the surties on the bond of S. R. Hoyle, tax-collector of Fulton county. The comptroller-general issued a *fi. fa.* on the bond against Hoyle and his sureties for default of Hoyle. Cahn's stock of goods were levied on and sold by sheriff for $800.00. After paying costs, $650.00 remains in sheriff's hands.

Mary E. Cahn, wife of E. Cahn, he refusing to apply, for herself and minor children, duly applied to the ordinary to have that money set apart and exempted under

the homestead laws.   The state, by the comptroller-general, made itself a party, and objected to her petition being granted, on the ground that the state had a superior claim to the money.   The ordinary granted the petition, and. the state appealed to the superior court, which is still pending.

The comptroller-general ruled the sheriff for the money, and in answer he set up the claim of Mary E. Cahn, of which he had been duly notified.   Mrs. Cahn was made a party to the rule.

The question submitted to the court was, who was entitled to the money?   The court gave judgment for the state, and the plaintiffs in error excepted.

HOPKINS & GLENN; HOKE SMITH, for plaintiffs in error.

W. T. NEWMAN, for defendant.

JACKSON, Chief Justice.

The sole question made by this record is, whether the execution issued by the comptroller-general against a defaulting·tax-collector and his sureties, is an execution for .taxes in the sense of the words used in the constitution of this state, in that clause which prevents the levy of ordinary final process upon property exempted for the family.   If the execution be for taxes, it is not prohibited from being enforced against such property; if not for taxes, it is prohibited.

That clause, identical in the constitutions of 1868 and 1877, is as follows: " No court or ministerial officer in this state shall ever have jurisdiction or authority to enforce any judgment, execution or decree against the property set apart for such purposes " (that is, for homestead and exemption for families,) " including such improvements as may be made thereon from time to time, except for taxes, for the purchase money of the same, for labor

done thereon, for material furnished therefor, or for the removal of incumbrances thereon." Constitution 1877, article 9, section 2.

When taxes get into the hands of the collector, and are not paid over to the state, they are still taxes due the state, and an execution therefor is to all intents and purposes an execution for taxes. And the money due by the defaulting collector and his sureties is taxes. And so it has been held by this court in 60 *Ga.*, 76. Sections 934 and 3732 of the Code, are cited to show that such money is called "taxes," and that the framers of the constitution of 1868 must be presumed to have used the word "taxes" as used and understood in the statutes of the state spread before their eyes in the Code. In reviewing that case, as we are asked to do, we have but to say that the reasoning appears sound, and law-makers, whether engaged in enacting fundamental or statute law, should be presumed to use the same words in the same sense in the one as in the other class of legislation, and sections 932 and 933 of the Code show that the sums collected are regarded as taxes until paid over. But section 3732 would seem conclusive as to legislative construction on this very point, to-wit: the nature of the execution against defaulting tax-collectors, and to make the use of the word "taxes" to embrace the money in the hands of the collector, and for which execution is to issue against him and his sureties.

Besides, the words of the section of the constitution of 1877, above cited, show that "taxes" are used in that, as in the preceding constitution of 1868, in a broad—the broadest sense. When "purchase money and removal of incumbrances, and labor done and material furnished," are used in the section, and judgments and executions issued for such things are permitted to be enforced, those terms are qualified in every clause by such words as "therefor" and "thereon," thus limiting the grant of power in such cases to enforce the process of the courts; but when the

word " taxes " is used, it stands alone, without limitation or restriction, and any execution for taxes' in the hands of anybody, due by anybody, so it be for taxes, money due the state from that source and not paid over, may be collected out of the person so owing that money, though it override his homestead and exemptions, or those of his family taken and set apart out of his property.

Does it matter that these taxes are owing by the man who obligates himself to see that another shall pay them over, though he did not handle the taxes himself? We think not. It is as if the collector gave his note for money due the state for taxes, and the surety signed that note. In that case it would hardly be contended that though the principal was bound for the taxes, the surety was not; that the promise was to pay taxes by the first, but not by the last. The obligation is the same. The one promises to pay over taxes collected by him; the other promises to pay the taxes so collected by the first, if the first does not.

It makes no difference that the form of the promise is a bond, and not a note; a sealed, and not a parol instrument; an official, and not an unofficial writing; or if there be any difference, the latter should have the greater sanctity and the higher dignity.

We hold, therefore, that the circuit court was right in ruling that the sheriff pay the money to the execution in favor of the comptroller-general, notwithstanding the claim for exemption out of the money raised from the surety's property under said execution, and the judgment must be affirmed.

Judgment affirmed.