## In re WALLER.

### (District Court, D. Maryland. July 5, 1905.)

1. BANKRUPTCY—DEBTS ENTITLED TO PRIORITY—TAXES.

An indebtedness of a bankrupt to a county of Maryland for county taxes collected by him as county tax collector, and not accounted for, or which should have been collected, and for which he is liable under the law of the state, is not one for "taxes" legally due and owing by the bankrupt to the county, and as such entitled to priority, under Bankr. Act July 1, 1898, c. 541, § 64a, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], over the claims of general creditors; nor is it an indebtedness due to the state, and entitled to priority as such.

2. SAME—DEBTS GIVEN PRIORITY BY LAWS OF STATE—INDEBTEDNESS TO COUNTY.

Neither the statutory nor the common law of Maryland, as settled by decisions, gives a county any lien or right of priority over other creditors in insolvency for money due to the county from a delinquent tax collector, so as to make the debt one entitled to priority in bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 64b, subd. 5, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448.]

In Bankruptcy. On petition of the state of Maryland, for the use of the county commissioners of Wicomico county, to be allowed priority of payment over the general creditors of the bankrupt.

William P. Lyons, Baldwin & Baldwin, and C. Howard Millikin, for trustee.

Joseph C. France and James E. Ellegood, for Wicomico county com'rs.

MORRIS, District Judge. The bankrupt, prior to September 1, 1903, was carrying on a boot and shoe business in the town of Salisbury in Wicomico county, Md., in partnership with one Thomas W. Waller, trading as R. Lee Waller & Co. On that day they dissolved the partnership, and R. Lee Waller, the bankrupt, assumed the debts and took an assignment of the partnership assets, including the stock of boots and shoes. R. Lee Waller, the bankrupt, had been, during 1900 and 1901, collector of taxes for Wicomico county, and was then in default for taxes collected for the county and not paid over. Suit was instituted against him in the name of the state of Maryland, to the use of the commissioners of Wicomico county, and against the surety on his collector's bond, at the September term, 1903, of the circuit court for Wicomico county, and judgment was entered October 2, 1903, for the penalty of the bond, to be released on payment of $16,641.59 and interest. In like manner suit had been entered at the September term, 1902, against Waller and another surety, and judgment had been entered September 23, 1902, for the penalty of the bond to be released on payment of $8,566.10 and interest. On these two judgments, at the date of the filing of the involuntary proceedings in bankruptcy against R. Lee Waller, viz., March 17, 1904, there was due about the sum of $14,300, and within four months prior to the filing of the petition execution had been issued on the judgments, and at the time of the filing of the petition the sheriff was in possession of all the bankrupt's stock of boots and shoes contained in his store.

In the bankruptcy proceeding receivers were appointed, to whom under orders of court, the sheriff delivered possession of the property held by him under the fi. fas. Waller was adjudicated a bankrupt, the property was sold, and the fund, amounting to about $8,000, is now in court for distribution. The county commissioners of Wicomico county claim the fund, which is less than the balance due them. They claim that the county is entitled to priority of payment over general creditors, for the reason that, being a public corporation and a governmental agency of the state of Maryland charged with the duty of assessing, levying, and collecting the taxes of said county, the default of said Waller as collector is a debt due to the state of Maryland, and that the state is, by virtue of its prerogative, entitled to priority of payment out of the assets of its debtors, being citizens of said state, over creditors having no lien, and that said priority could not constitutionally be affected by the bankrupt act. To this petition the trustee has demurred upon the ground that it does not appear that the state of Maryland is a creditor of the bankrupt, and that the debt due by the bankrupt is due to the county, and that the county is not entitled to any priority over other creditors. Answering the petition, the trustee further alleges that the stock of boots and shoes which were sold by the receiver and produced the funds now in court were purchased by the firm of R. Lee Waller & Co. from the merchants, who are now the creditors of said bankrupt, and that the debts incurred in the purchase of said goods ought rather first to be paid out of the proceeds of said goods.

It is admitted that the taxes collected by the bankrupt, and for the default in the payment of which claim is now made, are county taxes collected for the use of the county commissioners of Wicomico county and not for the state of Maryland. Every collector of county taxes is required to give bond in double the amount of the taxes to be collected by him, conditioned to account for and pay to the county commissioners the money he receives for the county commissioners or be answerable for by law, and also to give a separate bond to the state of Maryland for the money he shall receive for the state or be answerable for by law.

The question is whether, under the facts above stated, the county is entitled to priority of payment.

Section 64 of the Bankrupt Act of July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], in declaring what debts shall have priority, enacts that:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax, the same shall be heard and determined by the court."

Also among the debts entitled to priority of payment are placed:

"(5) Debts owing to any person who by the laws of the state or of the United States is entitled to priority."

It follows that if in the present case the sum of money due to Wicomico county is "taxes legally due and owing by the bankrupt to the county," or if for this debt owing to it the county by the laws of

the state of Maryland is entitled to priority, then the prayer in the petition of the county claiming the fund in the hands of the trustee must be granted.

First. Is the claim "taxes legally due and owing by the bankrupt to the county." By section 47, art. 81 of the Maryland Code Pub. Gen. Laws 1904, it is enacted:

"All state, county or municipal taxes shall be liens on the real estate of the party indebted from the time the same are levied."

Obviously the liability of the bankrupt to the county in the present case is not of the character intended and expressed by the word "taxes" in this section of the Maryland Code. By section 82 it is provided that, if any collector of county taxes refuses or neglects to pay over any money he has collected or ought to have collected, upon application to the county court upon twenty days' notice before the meeting of the court, judgment shall be entered against such collector for the amount due from him; and by section 84 it is provided that, if any collector of county taxes fails to account for and pay over the money he has collected or ought to have collected within the time required by law, his bond may be put in suit, and he shall be chargeable with interest from the time the money ought to have been paid. It may possibly be that part of the money included in the judgments recovered by the county against the bankrupt is for taxes he never collected, but which he ought to have collected, and is in the nature of a penalty for his defaults. There are many considerations which combine to point to the conclusion that the claim of the county against the bankrupt is not "taxes" legally due and owing by the bankrupt to the county, but is a claim for a debt arising out of the fact that the bankrupt, having been duly appointed collector of taxes for the county, failed to account for and pay over the money for which he was answerable by law and in accordance with the duties of his office.

In all the many provisions of the Maryland Code relating to the collection of taxes and the liability of collectors and the proceedings against them for defaults, there is no one which provides for any special lien or priority of payment as to the money due by collectors, for county taxes which have been collected by them for which they are answerable. Under the law of Maryland, it is the bond required to be given by the collector to which the county looks for security. In reading the Maryland decisions having relation to this subject, the difference between the position of the state which has priority over other creditors, and the position of a county which has not such a priority, ought to be borne in mind. That in the distribution of a debtor's assets the state, for any debt due to it, is entitled to a priority of payment in preference to other creditors by a common-law prerogative right is distinctly held to be the law of Maryland in State v. Bank, 6 Gill & J. 206–226, 26 Am. Dec. 561; State v. Baltimore, 10 Md. 504; and Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286. But there is not to be found any case or any statute by which the debts due to a county or a municipal corporation are given a prerogative right of priority. In State v. Baltimore, 10 Md. 504–515, where a collector, who was a defaulter both to the state and to the city of Baltimore, had

made a deed of trust to secure the sureties on his bond, it was held that, although the state and the city were both creditors, claiming through the grantor in the deed, and through his sureties, who were the cestui que trust in the deed, and under the same bond, the state's prerogative right of priority excluded, the city; the fund not being sufficient to pay the state. None of the Maryland cases or statutes give countenance to the suggestion that a city or county has the prerogative priority for debts due to it, such as the sovereign state has. By statute all taxes due by decedents are given priority over all other debts in the distribution of the estate of decedents, and it is enacted that, whenever sale of real or personal property, upon which taxes are due and payable, is made by any ministerial officer under judicial process or otherwise, the sums in arrear for taxes upon such property from the party whose property is sold shall be first paid and satisfied. Article 81, §§ 66, 68. It is because of this direct provision of law, and not because of any prerogative right, that county taxes are first paid in the distribution of the estate of decedents or sales by trustees, or in judicial proceedings in Maryland. Hebb v. Moore, 66 Md. 167, 7 Atl. 255; Degner .v. Baltimore, 74 Md. 144, 21 Atl. 697.

It follows that the debt due by the bankrupt to Wicomico county depends for its order of payment upon the first clause of section 64 of the bankrupt act, and, unless it is "taxes" due and owing by the bankrupt to the county, it does not come within the wording of that clause. It would seem that the debt is not in any plain and natural sense "taxes." A tax was imposed by the county upon the individual taxpayer; that money was collected by the bankrupt, or at any rate he became answerable for it. The money collected is gone long since; it cannot be traced. All that the county has is a claim against the bankrupt and his sureties, and all that the bankrupt had is a stock of goods purchased from merchants, for which purchases he is largely indebted. The question is whether the county shall have the whole fund or share it with the other creditors of the bankrupt. In such case the claim of the county should be clear and obvious, and not based on a strained use of words forced out of their natural meaning.

It is true that cases can be cited in which such a meaning has been imputed to the word "taxes," as is contended for here on behalf of the county, but the circumstances were peculiar, and the equity persuasive. Thus, in Cahn v. Wright, 66 Ga. 119, money resulting from an execution against a surety was asked to be set aside as exempted by the homestead laws. The Georgia homestead laws protected the exempt property from all claims "except for taxes," and the Supreme Court held that money due to the state, if it was due for taxes, would override the exemption. It would seem that, being a debt due the state, the priority of payment could have been supported on other grounds; but, at any rate, the decision should not be taken as a rule outside of its peculiar facts.

In Hargrove v. Lilly, 69 Ga. 326–328, it was held that in the distribution of a decedent's estate that county taxes were not state taxes,

and that the county could not assert the priority allowed to the state, and it was held that the county's claim against the estate of a collector who had collected taxes, and had not accounted for them, had no priority over other creditors. It would seem there is a recognized difference between taxes properly so called; that is to say, an impost for the support of the government, for failure to pay which the delinquent's property may be seized and sold, and the claim which the default of a collector gives rise to.

In Lane County, v. Oregon, 17 Wall. 71, 19 L. Ed. 101, cited by counsel for Wicomico county, the point which in the end of the Supreme Court decided was that the act of Congress known as the legal tender act, making notes issued by the United States legal tender in payment of all debts, public and private, related only to debts, in the ordinary sense of the word, arising out of simple contracts or contracts by specialty, which includes judgments and recognizance, and had no reference to taxes imposed by state authority. And so the court ruled that a law of Oregon, requiring taxes to be collected in coin and to be paid over by the collectors in coin, was not affected by the Act of Congress.

In Bent v. Hubbardston, 138 Mass. 99, a claim by the town against the estate of Warren, an insolvent tax collector, was allowed priority, for the reason that the statute gave priority to all debts due to and taxes assessed by any town. The priority was allowed as a debt; the court saying:

"We concur in the plaintiff's view that the taxes collected by Warren ceased to be taxes eo nomine and constituted a debt due by Warren to the town."

And in Hargrove v. Lilly, 69 Ga. 329, above cited, the court said, with reference to a statute which gave priority to unpaid taxes, "It is hardly necessary to say that the unpaid taxes referred to in the section of the Code cited are intended to provide for such as may be due from the individual on his own personal taxes," and denied priority to a claim of a county against the estate of its deceased collector.

We find that in Maryland the legislature has carefully provided in many ways for the security of the county on whose behalf a collector has made collection of taxes, but it has abstained from giving to the county a lien against the property of the collector, or any priority in the distribution of his estate as against his other creditors. Parlett v. Dugan, 85 Md. 407, 37 Atl. 36.

Holding, as I do, that the taxes legally due and owing by the bankrupt to the county, which is given priority by section 64 of the bankrupt act, does not include the money due by him to the county for taxes which he has collected and should account for, I rule that the petition of the county commissioners of Wicomico county must be denied.