THE STATE OF MISSOURI, TO USE OF ANSYL PHILLIPS, ASSIGNEE OF THE ILLINOIS RIVER PACKET COMPANY, Respondent, *v.* EDWARD S. ROWSE *et al.*, Appellants.

1. *Revenue—Taxes—Lien on personal property—Lien will prevail over claims of creditors—Execution, how issued—Statute, construction of.*—For payment of taxes on the personal property of a debtor, the State has an equitable lien which will prevail over the claims of creditors; and the lien is not discharged by an assignment of the property of the debtor for the benefit of creditors. In case of such assignment the collector is authorized, under the statute (Wagn. Stat. 1188, § 26), to seize and sell the property in the hands of the assignee. The spirit of the law will treat the property as *pro hac vice* the property of the assignor, and will not drive the State into equity to enforce its claim.

*Appeal from St. Louis Circuit Court.*

*H. A. Clover*, for appellants.

I. It is unnecessary for defendant in this case to claim, and he does not, that the State has a preference over other creditors, for a debt due to it which arises *ex contractu*, and which is therefore due to it in its corporate capacity. (6 Gill & J. 205, 230.)

II. In like manner it is unnecessary for him to claim that the State has a lien for unpaid taxes which would or should be preferred against a purchaser of personal property for a valuable consideration without notice. This would be a secret lien which would so embarrass the transfer of personal property as to prevent almost the transactions of men, and the law, moreover, does not give it.

III. It is, however, insisted that debts which are due to the State as a sovereign, and for the protection of both the citizen and property, are in the distribution of the estate of an insolvent, which is distributed through the machinery of the law of the State and to be preferred upon principle and reason; for that,

1. The State, not being named in the act concerning voluntary assignment, is not bound by it.

2. That the assignee is not a purchaser, in that sense, for a valuable consideration without notice so as to deprive the State of its dues.

3. That the assignee takes the estate *cum onere* with the same right, and none other, which the assignee had.

4. That it is the duty of the assignee to protect the property, and that the payment of taxes is part of the necessary expenses of executing the assignment itself, and to hold otherwise would be unreasonable. The assignee would be liable to suit by creditors for failing to pay taxes as breach of his duty, just as an administrator would at the suit of the representatives for same act.

IV. That the collector had the right to enforce the payment of taxes in the manner pointed out by the law after the assignor had refused to pay. He had the same right and had imposed upon him the same duty as if the property had remained with the assignor.

V. If he had not, the plaintiff could recover only nominal damages, as shown by the statement in this cause made by plaintiff's attorney, as the only injury done which may so enforce the payment of the exact amount of taxes due to the State, and no more.

*S. N. Holliday*, for respondent.

The question in this case is, can a collector lawfully seize upon and sell personal property for taxes due by the assignor after that property has been assigned and delivered to an assignee for the benefit of all the creditors of the assignor, under the voluntary laws of the State of Missouri?

1. The collector can only " seize and sell the goods and chattels of the person liable for the taxes, in the same manner as goods and chattels are or may be required to be seized and sold under execution issued on a judgment at law." (Wagn. Stat. 1188, § 26.) We have only to inquire what goods may be required to be seized and sold under execution issued on a judgment at law.

2. Under an execution issued on a judgment at law, only the goods and chattels of the defendant at the time of the levy can be seized and sold. A judgment at law has never been a lien on personalty in this State. (Wagn. Stat. 607, § 23.)

3. A voluntary assignment for the benefit of creditors com-

pletely divests the title of the property out of assignor, and transfers the legal title to the trustee and the equitable title to the creditors. (Gates v. Labeaume, 19 Mo. 17; Burr. Assign. 239; and see Valentine v. Decker, 43 Mo. 583.)

The plaintiff insists that our statute makes this the only guide to the collector. Could the sheriff be required to seize and sell the property under an execution issued on a judgment at law?

4. The assignment act is not void as to the State because she is not named therein. The maxim *nullum tempus occurit regi*, as its terms import, was solely applicable to limitation laws, and was to prevent the loss of the State revenue by the negligence of public officers. (St. Charles County v. Powell, 22 Mo. 525.) It had no reference to assignment or other general laws.

5. The State has no lien on personalty for taxes. There is no provision of our statute law making taxes a lien on personalty, nor is any such lien recognized in any of the provisions of our revenue law. It is the duty of the collector, first, to levy upon the goods and chattels of the tax debtor for all the taxes. If personalty is levied upon, it is for all the taxes due by delinquent, both on real and personal estate; and when the property is sold, the proceeds must necessarily be applied to the tax-bill as a whole. No article of personalty can, under our law, be sold for the taxes due upon itself alone if the delinquent owes other taxes. Each tract of real estate can be held liable only for the taxes due upon itself. (Rice v. Powell, 44 Mo. 436; Parker's Appeal, 5 Barr, 390.)

The law expressly provides that each lot or tract of land shall be held liable and be sold for all taxes assessed upon it, but there is no exclusion of equitable liens on the real estate. But there are no such provisions in regard to personalty. The tax on real estate is a direct charge upon the land itself, and is in proportion to its value. It is in the nature of an impost—a charge upon the thing itself. The tax upon personalty in our State is essentially different in this respect. It is more in the nature of a tax upon the person, the value of his personalty determining the amount of the tax. If the taxes were a lien upon personalty, in the absence of any statutory provisions on the subject, the principle could not

on any reasonable hypothesis be extended further than to make each piece of personalty liable for the tax on itself, no more. There is no reason why an article of personalty should be bound by a lien for the taxes due upon the real estate and upon the personalty, any more than a piece of real estate should be bound by a lien for the taxes upon other real estate.

Taxes are held to be a lien on real estate from the time of assessment. If such were the law in regard to personalty, the restraint upon its sale would be well nigh continuous. Assessments are made as of the first of September in each year, and it is usually as late as the succeeding September before the taxes can be paid. We must not forget that the law makes it the duty of the collector to collect all the taxes by first seizing and selling the personalty; it does not give the taxes on personalty any prefference or priority in the payment out of the proceeds of the sale of the personalty. So that if taxes are liens, or have any preference or priority upon the personalty, all taxes, both on realty and personalty, must be included; there can be no separation or distinction in this regard, and a man's personalty will be encumbered with all his taxes from September in each year until they are paid in the succeeding September, and each separate piece of personalty would be encumbered with all the taxes of its owner; and if there is any lien at all, it is good for five years to say the least.

Taxes have never been regarded by the people of this State as a lien on personalty. There is not a sale of realty but the taxes are thought of and provided for, no matter how trifling in value the ground may be. There is not a sale of personalty, no matter how valuable it may be, wherein the question of taxes is ever thought of, mentioned, or provided for. (Anderson v. The State, 23 Miss. 459.)

In Illinois all the personalty of the tax-payer, in his hands at the time the collector receives the tax-books, is bound for the payment of taxes. (Gross' Stat., ch. 89, p. 608, § 181; Hill v. Figley, 23 Ill. 418.)

In Indiana a lien on personalty is expressly given by statute for taxes, " which lien," the statute says, " shall in nowise be affected or destroyed by any sale or transfer of any such personal

property." (Ind. Stat. 1860, p. 100, § 113.) This statutory lien would certainly follow the property in the hands of an innocent purchaser. The lien on real estate in Missouri follows the property in the hands of an innocent purchaser. If there is any lien on personalty the same result must follow. But if taxes are a lien on personalty, on what personalty are they liens, and for which taxes? (1) Is it only the personalty assessed? or, (2) Is it only that personalty that was assessed and remained in the hands of the tax-payer until the tax-bills were issued and given to the collector? or, (3) Is it all that personalty in the possession of the tax-payer at time of levy, as is the law in New York? or, (4) Is it all the personalty in the hands of the tax-payer when the bills were given to the collector? or, (5) Is it only that personalty of the tax-payer that could be required to be levied on under an execution issued on a judgment at law? or, (6) Is each separate piece of personalty bound by a lien for the taxes due upon itself alone? or, (7) Is each piece of personalty bound by a lien for all the taxes due by the owner? My opinion is that the State has no lien upon personalty for taxes. (Anderson v. State, 23 Miss. 459.) The State has no priority over other creditors in cases of voluntary assignments. The statute gives no preference. (Wagn. Stat. 154–6, §§ 21, 35.) The State has priority by statute in cases of assignment, in Connecticut, Florida, and some of the other States. (Gen. Stat. Conn. 1866, p. 437, § 135; Thompson's Dig. Laws of Fla., 417, § 5.)

Even if the State had priority, it is lost by alienation by the assignment for benefit of creditors. (Anderson v. The State, 23 Miss.; The State v. Bank of Maryland, 6 Gill & J. 205.) The United States has priority by statute, yet it is lost by a *bona fide* alienation. (Fisher's case, 2 Cranch, 358; Thelussion v. Smith, 2 Wheat. 396.) An assignment in trust for creditors defeated the king's priority. (3 Price, 6.)

Even though the State had a priority, the only way she could have enforced it was to have proven her claim before the assignee, and had her priority enforced through him. (Wagn. Stat. 156, § 35.) All the priorities could be easily enforced through the assignee. The priority of the United States is a right to prior

payment out of the funds in the hands of assignees, and does not prevent the property from vesting in them. (Canard v. Atlantic Ins. Co., 1 Pet. 386, 438 ; Canard v. Nicoll, 4 Pet. 303 ; Brent v. Bank of Washington, 10 Pet. 596.) In the case cited above of The State of Maryland v. The Bank of Maryland, the State endeavored to enforce her priority by action against the assignees. She did not attempt to ignore the assignment, as is attempted in this case.

How is the State to enforce her priority allowed her by statute in the case of decedents? The claims must be presented for allowance and classification just as those of any other creditor. If she fail to present them, does she not lose her debt? All debts must be presented, allowed and classified except taxes, and these the statute expressly authorizes an administrator to pay without allowance. Only taxes can be paid without allowance. If their presentation for allowance had not been expressly dispensed with, would it not be necessary to present them for allowance the same as other claims? If it is necessary in cases of decedents to present the claims of the State to the court for allowance and classification, even though the statute gives these claims priority, much more must we hold that in cases of voluntary assignment must the State present her claims for allowance to the assignee. The levying of taxes is solely a measure of statutory creation, and no means can be resorted to, to coerce their payment, other than those pointed out by statute. (City of Carondelet v. Picot, 38 Mo. 125.)

Bliss, Judge, delivered the opinion of the court.

The Illinois River Packet Company had for several years neglected to pay their taxes, although regularly assessed, and finally made an assignment under the statute to Ansyl Phillips, for the benefit of their creditors. Subsequent to the assignment the defendant Rowse, as tax-collector, seized and sold a sufficient portion of the property so assigned to pay the taxes, which was bid in for the precise amount due, for the benefit of the assignees. This suit was instituted against Rowse on his official bond, and the Circuit Court gave judgment against him.

It is admitted that the State has no express lien by statute upon personal property for taxes assessed against its owner on account of such property. Otherwise the property could be pursued wherever it might be found, though purchased for value without notice. In view of the enormous amount of property that escapes taxation altogether, and the consequent increased burdens upon those who honestly pay taxes, it may be a question whether a limited lien, considered necessary in most of the States, should not be created. But in the absence of such a lien the inquiry arises whether the obligation to pay taxes is not of such an imperative character as to make the claim of the State upon the property of the tax debtor paramount to that of other creditors.

By the common law all debts due the crown were preferred to claims of private citizens. So far as taxes are concerned, every consideration requires that this rule be rigidly observed. The liability for them is not an ordinary one, and cannot be likened to a common debt. Their collection is vital to the enforcement of the law and the very existence of government, and I know of no authority that places the obligation to pay them upon a level with liabilities upon contracts. If the claim of the State were an ordinary one, such as might arise on behalf of an individual, the authorities cited might show that its priority was lost by the assignment, but the obligation to pay taxes can never be so considered, although there may be no express statutory provision upon the subject.

It is true the act concerning assignments does not, like that concerning administration, provide for such preferences, and for the reason that it does not, like the latter act, undertake to classify the liabilities, but uses the general term, "according to their right," in directing the payment of demands. (Wagn. Stat. 156, § 35.) Had the statute, as in the administration act, classified the demands and omitted to give a priority to taxes, it would give color to the claim that the State intended to place this 'liability upon a level with others. But the omission to make any classification can receive no such construction.

The claim of the State may be likened to an equitable lien—

one that is not actual and will follow the property into the hands of a *bona fide* purchaser for value, but still a *quasi* lien that attaches to the property until it encounters a higher equity. Such liens are not discharged by an assignment for the benefit of creditors. "The prevailing rule now is that neither the assignee nor the creditors whom he represents are purchasers for a valuable consideration without notice, as against prior equitable liens. There must be some consideration passing at the time of the assignment, some new responsibility incurred, or some rights given up, to invest an assignee with this character." (Burr. Assign., 2d ed., 484.) The author, on the same page, mistakes the spirit of our decisions when he says that "in Missouri assignees are treated as *bona fide* purchasers for valuable considerations," and refers to Gates v. Labeaume, 19 Mo. 17. The consideration is sufficient to support the assignment as against the statute of frauds, and so it is held in all the States, but it is not such as to cut off equities that were good against the assignor. The assignee, so far, stands in his shoes.

If the assignment does not divest the State of its claims, how shall it be enforced? Section 26 of the revenue act, under which the levy was made (Wagn. Stat. 1188), provides that collectors "shall have power to seize and sell the goods and chattels of the persons liable for the taxes, in the same manner as goods and chattels are or may be required to be seized and sold under execution issued on judgments at law, and no property shall be exempt," etc. This provision (1) authorizes the collection of taxes by seizure and sale of goods, and (2) provides that they shall be sold as under common execution. Was the defendant authorized under it to seize and sell property in the hands of the assignee? The claim that they are no longer "the goods and chattels of the person liable for the taxes" is not without plausibility, and yet they are held for him, to be used in his interest, by one who holds, among other relations, that of an agent of the assignor, and the State has a prior claim upon them. Under these circumstances the spirit of the law would treat the property as so far the property of the assignor, and will not drive the State into equity to enforce its claim. This is not a case of a sale or mort-

gage for a consideration that would protect it from a secret or equitable lien, but the property is still that of the assignor, with the trust ingrafted upon it. If there is a surplus after paying the debts it goes back to him, and, in the interest of the public revenue, should be still treated as so far his as to be subject to the statutory provision for the collection of taxes.

Counsel upon each side have presented many decisions of other States, but I have made no reference to them, as they are of necessity colored by the legislation of those States. I have seen none that tends to throw doubt upon the conclusions at which we have arrived, but, on the other hand, the spirit of all sustains it.

The judgment must be reversed and the petition dismissed. The other judges concur.