In the Matter of the General Assignment for the Benefit of Creditors of ROCKAWAY PAINT CENTRE, INC., Assignor, to HARRY MINKOFF and IRVING WEISSMAN, Assignees, Appellants.

THE CITY OF NEW YORK, Respondent.

Second Department, November 16, 1936.

*Julius Zizmor*, for the appellants.

*Sol Charles Levine* [*Paul Windels, Corporation Counsel*, and *Paxton Blair* with him on the brief], for the respondent.

JOHNSTON, J. The facts are not in dispute. On October 25, 1935, the assignor, Rockaway Paint Centre, Inc., made an assignment for the benefit of creditors. Thereafter the city of New York filed a claim for $164.56 (plus penalty), representing taxes due on sales made by the assignor prior to the assignment. These taxes were imposed under Local Law No. 24 (published as No. 25, p. 164) of the New York City Local Laws of 1934, and were collected by the assignor. The assignees admit the claim is valid as a general one. The city asserts its claim is entitled to priority. The Special Term so ordered, and the assignees appeal.

Appellants contend the assignor acted as the city's agent in the collection of the taxes and upon collection the moneys lost their identity as tax funds and now represent an ordinary debt owing from the assignor as agent, to the city as principal.

To determine whether the moneys concededly due are taxes or constitute a mere debt, it will be necessary to consider the statute empowering the city to impose a tax, as well as the local law adopted pursuant to it.

On August 18, 1934, the Legislature authorized any city having a population of one million inhabitants or more acting through its local legislative body, to impose in any such city any tax and/or taxes which the Legislature has or would have the power to impose, to relieve the people of any such city from the hardships and sufferings caused by unemployment and make provision for the collection thereof by the chief fiscal officer of any such city. (Laws of 1934, chap. 873.) Section 2 of the statute specifically provides: " Revenues resulting from the imposition of taxes authorized by this act shall be paid into the treasury of any such city and shall not be credited or deposited in the general fund of any such city, but

shall be deposited in a separate bank account or accounts and shall be available and used solely and exclusively for the relief purposes for which the said taxes have been imposed under the provisions of this act."

Acting under the power thus granted, the city, on December 28, 1934, adopted Local Law No. 24, amending Local Law No. 20 (published as Local Law No. 21, p. 143), for the year 1934. The latter was adopted to relieve the people of the city of New York from the hardships and suffering caused by unemployment and the effects thereof on the public health and welfare by imposing a tax " upon receipts from sales of certain properties and services in the city of New York, to enable such city to defray the cost of granting unemployment work and home relief." · The local law, as amended, provides that the tax is to be paid " by the purchaser to the vendor, for and on account of the city of New York, and the vendor shall be liable for the collection* thereof, at the time when the property is delivered* or the service rendered " (§ 2). The vendor must file a return of his receipts and the taxes payable thereon (§ 5) and *he* must then pay " the taxes   *   *   *   upon the receipts required to be included in such return," and all such taxes " shall be due from the *vendor* and payable   *   *   *   on the date limited for the filing of the return for such period " (§ 6). The vendor may be required to collect the tax and to file a bond " to secure the payment of any tax and /or penalties due or which may become due from such vendor " (§ 6). "·Whenever any vendor or purchaser shall fail to collect and pay over any tax and /or *to pay any tax or penalty*," the city may bring an action to recover it and as an additional or alternate remedy may issue a warrant directed to the sheriff commanding him to levy upon and sell the real and personal property of the " *vendor* or purchaser " (§ 8). The local law also provides, in substantially the same language as section 2 of the statute quoted above, for the disposition and application of the revenues derived from the tax (§ 17).

It thus appears the tax is imposed not on the vendor or the purchaser, but " upon receipts from sales." True, the obligation to pay the tax is placed in the first instance upon the purchaser, but a concurrent obligation is placed upon the vendor to collect it, and, whether he does or does not collect it, a direct and independent obligation is cast upon the vendor to pay it to the city. Once the purchaser pays the tax, whether to the vendor or directly to the city, he is discharged from liability. But until the receipt of the tax by the city, the vendor remains liable for it. The fact that in

---

* Words between asterisks appear to have been omitted from the amendment by inadvertence. (See original Local Laws of Cities in State, p. 145.)

the event of non-payment the city has a right to proceed against the purchaser does not diminish the liability of the vendor or change the character of his obligation from that of a tax to a debt. Therefore the moneys due from the assignor are tax funds. The remaining question urged by appellants is that the city's claim is not entitled to priority over the claims of the assignor's general creditors.

Under the common law with respect to the payment of taxes, the King or Crown was entitled to a preference over all other creditors of the taxpayer; and the State, as successor to the rights of the King, has inherited this royal prerogative. (*Central Trust Co.* v. *N. Y. C. & N. R. R. Co.*, 110 N. Y. 250; *Matter of Carnegie Trust Co.*, 151 App. Div. 606 [1st Dept.]; affd., 206 N. Y. 390.) It is well settled, at least in this State, that by virtue of the common law the sovereign right of priority extends not only to taxes but also to debts due the State as a sovereign. (*Matter of Carnegie Trust Co., supra; Matter of Niederstein*, 154 App. Div. 238 [2d Dept.]; *Matter of Wesley*, 156 id. 403; *Marshall* v. *New York*, 254 U. S. 380.)

Appellants, while not disputing the State is entitled to preference in the payment of its taxes and debts created by unequivocal acts of sovereignty, insist the city enjoys no such right. In support of this contention appellants cite *Matter of Lazaroff* (84 F. [2d] 982).

While there is a conflict in the various jurisdictions as to whether cities, counties and other political subdivisions of the State are entitled to assert the common law prerogative (36 A. L. R. 640 *et seq.*), the rule in this State is that this right is available to every political subdivision provided it is acting in the performance of a governmental or sovereign function as distinguished from a private or corporate function. (*Matter of Northern Bank of New York*, 85 Misc. 594; affd., 163 App. Div. 974; affd., 212 N. Y. 608.)

As far as we know, the only case holding to the contrary is *Matter of Lazaroff (supra)*, recently decided by the Circuit Court of Appeals, Second Circuit. That case involved the Bankruptcy Act, as amended, which provides a claim is entitled to priority if it is one for taxes due and owing by the bankrupt or for a debt accorded priority by the State law. The city, under circumstances identical with those in the instant case, asserted its right to priority on its claim for sales taxes imposed by the same local law applicable here. The court held the claim was neither a tax entitled to priority nor a debt given priority by the law of the State. We have already shown the city's claim is for tax funds. The learned judge writing for the Circuit Court of Appeals said: " The distinction between the obligation of a taxpayer to pay a tax imposed and the debt which one who has collected a tax owes therefor to the taxing agency

is well settled." In support of this proposition — of which there is no doubt — the learned judge cites *Nolte* v. *Hudson Nav. Co.* (8 F. [2d] 859); *Commonwealth of Pennsylvania* v. *York Silk Mfg. Co.* (192 F. 81; certiorari denied, 232 U. S. 724); *Matter of Waller* (142 F. 883); *Matter of Wyoming Valley Ice Co.* (145 id. 267). But each of these cases is readily distinguishable from the instant case.

In *Commonwealth of Pennsylvania* v. *York Silk Mfg. Co.* (*supra*) the obligation to pay the tax was not upon the bankrupt corporation, but upon the holder of a bond. Here the obligation to pay is upon the assignor.

In *Matter of Waller* (*supra*) the question was whether the liability of a bankrupt tax collector for taxes collected and not paid over to the county was for the taxes or for a debt. The court, considering the special remedies provided by the Maryland statute against a defaulting tax collector and his surety, properly determined his liability was for a debt. There the bankrupt, unlike the assignor here, was never liable for the taxes as such.

In *Nolte* v. *Hudson Nav. Co.* (*supra*) a tax was imposed by a Federal statute upon passengers and shippers, and the carrier was required to collect the tax from them and pay it to the government. There was no direct obligation on the carrier to pay the tax. Its duty was that of a tax collector, and hence its liability in case of default was that of an ordinary debtor. In the instant case, as heretofore indicated, the assignor is both tax collector and taxpayer. His obligation is to pay the tax as such whether or not he collects it.

In *Matter of Wyoming Valley Ice Co.* (*supra*) an annual tax was imposed upon the holder of corporate bonds, based on the value thereof, and as a means for its collection the corporation was required to deduct from the interest payments made to the holder of a bond the amount of the tax and remit it to the State. For its service in collecting the tax the corporation was entitled to the same fees as the city treasurers received for performing similar services. In the event of its failure thus to collect and pay the tax, the corporation was liable. There the corporation was a tax collector and not a taxpayer, and in the event of non-payment it was liable for an ordinary debt.

If the local law imposed merely the duty on the assignor to collect the tax and pay it over to the city, he would be a tax collector and not a taxpayer, but, as heretofore pointed out, he is liable for the tax as such whether or not he collects it.

The court, while admitting the State is entitled to payment of its debts prior to general creditors, held the city enjoys no such preference. With that conclusion we do not fully agree. It is

predicated upon what we believe is a misconception of the decision in *Matter of Northern Bank of New York (supra)*, cited by the learned court and relied upon by appellants. There the city had deposited with a bank which thereafter became insolvent, moneys derived from taxes, water rents, assessments and arrears collected by the city. The city claimed a preference for the taxes collected and deposited. Mr. Justice LEHMAN (now Judge LEHMAN) pointed out the city does not act exclusively in a governmental capacity and except when it is so acting it is not a sovereign power. The learned justice held once the taxes had been collected by the city and deposited in its general account the governmental function, pursuant to which they were levied and collected, terminated and thereafter they were available for all city purposes, and the city's claim to them ceased to be the claim of a sovereign. The learned justice also held when the moneys were deposited the city was " a separate entity acting for its own purposes and not a subdivision of the State, and consequently not entitled to the prerogatives of a sovereign."

The facts which distinguish the *Northern Bank* case from the instant case are obvious. There the city in its private capacity deposited, as it had a right to do, its own moneys in its own general fund and they were available for its own purposes. Here the Legislature, when it authorized the city to impose the tax which gives rise to the instant claim, expressly provided the revenues resulting from the tax shall be deposited in a separate bank account and used exclusively to relieve the people of the city from the hardships and suffering caused by unemployment. In imposing and collecting the tax and in disposing and applying the revenues derived from the tax the city was acting in a purely governmental capacity.

The care of the unemployed in the city of New York is not a matter of local concern alone. It is a matter of State interest. Unemployment was so widespread the Legislature declared the existence of an emergency and empowered the city to impose taxes to raise the funds to defray the cost of granting unemployment work and home relief. In exercising the authority thus conferred, the city is the agency of the State in performing a State function. That this is so clearly appears from the opinion of Judge LOUGHRAN and the concurring opinion of Chief Judge CRANE in *New York Steam Corp.* v. *City of New York* (268 N. Y. 137), where the court considered the constitutionality of a similar statute, which for the first time conferred power upon a municipality to enter the field of indirect or excise taxation, as well as the constitutionality of a local

law adopted pursuant to the provisions of the statute imposing a license or excise tax upon every person doing business in the city of New York and subject to the supervision of the Public Service Commission. The statute and local law there considered, like the statute and local law here involved, were enacted to relieve the people of the city from the hardships and suffering caused by unemployment and the effects thereof on the public health and welfare.

The order should be affirmed, with ten dollars costs and disbursements.

Present — LAZANSKY, P. J., CARSWELL, DAVIS, JOHNSTON and ADEL, JJ.

Order denying motion for an order declaring the claim of the city of New York for sales tax and penalties is a general claim and not entitled to priority over the claims of other creditors unanimously affirmed, with ten dollars costs and disbursements.