## In re HARRIS.
## CLIFT v. OKLAHOMA TAX COMMISSION.

No. 28314.   March 14, 1939.

J. G. Clift, pro se.

C. D. Cund, A. L. Herr, and Wendell Barnes, for defendant in error.

Tomerlin, Chandler, Shelton & Fowler and John W. Swinford, amici curiae.

OSBORN, J.   This is an appeal from an order of the district court of Stephens county directing J. G. Clift, assignee for the benefit of the creditors of C. A. Harris, to accord preference to a claim by the state for sales tax over the claim of general creditors in payment of the insolvent's debts out of the proceeds from the liquidation of the insolvent's assigned assets.

It is admitted that the tax became due before the assignment for the benefit of creditors was executed, but apparently the Tax Commission had taken no legal steps for collection of the tax until filing a motion in the insolvency proceedings seeking preferred payment of the claim, which motion was upheld in the court's order of distribution.   The question was presented to the lower court on an agreed statement of facts.

The first question presented is whether the claim of the Oklahoma Tax Commission for unpaid sales tax, under the Consumers' Tax Law, chap. 66, art. 7, S. L. 1935, against the insolvent vendor, who subsequent to the accrual of said tax made an assignment for benefit of creditors, is a claim for taxes due the state of Oklahoma from said vendor as a taxpayer, or merely an ordinary debt owing from the vendor as agent to the state as principal.

It is the contention of the assignee that the vendor is required to act only as an agent in the collection of the sales tax and, though required to pay to the state the amount of the tax, his liability is only that of an ordinary debtor. We cannot agree with this contention. Although the title to the act levying the tax, "Oklahoma Consumers' Tax", and the provisions of section 8 thereof that the tax shall be paid by the consumer to the vendor tends to support the contention of the assignee, nevertheless a consideration of the act in its entirety leads to the conclusion that the vendor stands in the same relationship to the state, with reference to the payment of the tax, as does the ordinary taxpayer. The following provisions disclose that to be the proper interpretation. It is the duty of all vendors to transmit each month returns to the Oklahoma Tax Commission showing the gross proceeds arising from all retail sales during the preceding calendar month. and to remit the tax computed thereon. Section 6. The tax is levied upon the gross receipts or proceeds of all sales as disclosed by the individual vendor's return to the commission. Section 4. All penalties for failure to pay the tax are directed against the vendor. Sections 6, 7, and 8. The state may sue the vendor to collect the tax accrued and unpaid and may enjoin any vendor refusing to make a return or to remit the tax accrued from operating as a vendor until the required return is made and the tax remitted. Section 11. A tax warrant may be issued against the vendor for accrued taxes and upon said warrant being filed with the proper court clerk, the tax constitutes a

lien upon the property, both real and personal, of the vendor. Section 13.

The foregoing provisions are penalties and liabilities ordinarily directed against an ordinary taxpayer. Similar provisions were relied upon by the New York Court of Appeals in Re Atlas Television Co., Inc., 6 N. E.2d 94, as disclosing the legislative intent to create the relationship of sovereign and taxpayer between the vendor and the city of New York in a similar case arising under the sales tax law of the city of New York. We shall discuss this case more fully hereafter.

In providing a remedy for the aggrieved taxpayer, section 14 provides:

"Right of Action of Taxpayer—Payment Under Protest—Refunds.

"(a) A right of action is hereby created to afford a remedy at law for any vendor aggrieved by the provisions of this Act. * * *"

The vendee is not referred to in the foregoing section creating remedies for the aggrieved taxpayer. We think it clear that the Legislature intended that the vendor be considered the taxpayer, and he is so designated in the above section. The remedies for enforcing the collection of the sales tax are directed against the vendor, and all remedies in favor of the taxpayer are given to the vendor. The vendor must pay the tax upon the basis of the gross proceeds of his retail sales and not upon the amount of the sales tax which he has collected from the vendee or consumer.

The assignee herein stresses section 6, paragraph (d) of said Consumers' Tax Act, which provides:

"And for the purpose of collecting and remitting to the state the tax imposed by this act, the vendor collecting such tax shall be, and is hereby declared to be, the agent of the state for such purpose, and the failure of any such vendor to remit or pay such tax to the state shall constitute embezzlement and be punishable as provided by law for the embezzlement of public funds."

The Gasoline Excise Tax, ch. 111, section 3, 1933 Session Laws, contains a somewhat similar provision in the folowing language:

"(b) Provided that in the collection of such excise tax by the distributor as such agent, such distributor or agent shall collect and receive such tax, at the rate required by law, as money, property and funds of and belonging to the state of Oklahoma, to be held in trust by such agent as funds and property of the state of Oklahoma, to be reported and paid over to the state of Oklahoma, as provided by law."

Paragraph (c) of the above section 3 provides that if any distributor, as agent of the state of Oklahoma, fails to pay the tax over to the state when due and appropriates it to his own use or to the use of any other person in a manner not in the "due and lawful execution of his trust as such distributor and agent," he shall be deemed guilty of embezzlement. The two foregoing provisions have obvious differences, but the purpose of the two provisions is substantially the same. Both declare the vendor or distributor to be the agent of the state in collecting the particular tax.

In Gibson Co. v. Oklahoma Tax Commission, 180 Okla. 53, 68 P.2d 87, this court in determining whether the general principles of agency were applicable to the relationship created by the above section of the Gasoline Excise Tax held:

"Notwithstanding the provisions of section 3, ch. 111, S. L. 1933, making every licensed distributor of gasoline an agent for the state for the collection of gasoline excise tax, said distributor stands in the same relationship to the state with reference to the payment of the tax as does the ordinary taxpayer."

Consequently, in view of this statement, designation of the vendor as agent of the state in the Consumers' Tax Law, supra, should not alter our conclusion that such vendor, for the purposes of the payment of the tax levied by said act, stands in the same relationship to the state as the ordinary taxpayer.

The question as to the vendor's relationship to the state under a sales tax ordinance has arisen in other jurisdictions. The city of New York enacted a sales tax pursuant to statutory authorization, and in Re Atlas Television Co., Inc., supra, the Court of Appeals of New York reversed the judgment of a lower court holding that the city's claim was not for taxes due the city from the insolvent vendor, but for moneys collected by the insolvent as agent for the city. In that case the insolvent vendor had made an assignment for the benefit of creditors and the city sought to establish its claim for unpaid sales tax as a preferred claim against the assets of the insolvent vendor. In determining the insolvent vendor's relationship to the city that court said:

"It is the contention of the assignee that, even though the vendor of property is the person entitled to the 'receipts from

every sale', the tax laid is upon the purchaser, and that the vendor is required only to collect the tax as the collecting agent of the city and though required to pay to the city the amount of the tax, his liability is only that of an ordinary debtor.

"The statute contains provisions which lend support to the respondent's contentions. It places obligations upon both the vendor and purchaser and describes these obligations as follows:

" 'Upon each taxable sale or service the tax to be collected shall be stated and charged separately from the sale price or charge for service and shown separately on any record thereof, at the time when the sale is made or evidence of sale issued or employed by the vendor and shall be paid by the purchaser to the vendor, for and on account of the city of New York, and the vendor shall be liable for the collection or the service rendered; and the vendor shall have the same right in respect to collecting the tax from the purchaser or in respect to nonpayment of the tax by the purchaser, as if the tax were a part of the purchase price. * * *

"Where a purchaser has failed to pay and a vendor has failed to collect a tax upon a sale or service, as imposed by this local law, then in addition to all other rights, obligations and remedies provided, such tax shall be payable by the purchaser directly to the comptroller and it shall be the duty of the purchaser to file a return thereof with the comptroller and to pay the tax imposed thereon to the comptroller within fifteen days after such sale was made. * * *'

"We might agree with that conclusion (referring to the opinion of the U. S. C. C. A. in Matter of Lazaroff, 84 F.2d 982, hereinafter discussed, which held the city not entitled to preference on such a claim in a bankruptcy proceeding) if the local law did not contain other provisions which indicate that the obligation imposed upon the vendor is in the nature of a tax. He must file a return of his receipts from sales. Section 5. The duty of payment to the city is laid upon the vendor, not the purchaser. His liability is not measured by the amount actually collected from the purchaser but by the receipts required to be included in such return. Section 6. He must pay the tax even if failure to collect is due to no fault of his own. * * *

"It has provided that the vendor must pay the tax to it. Though the vendor is required, at least in most cases, to collect the tax from the purchaser 'for and on account of the city', the purpose of that provision is to place the incidence of the tax immediately on the consumer. The city can collect only from the vendor. The vendor's obligation to pay the tax is not measured by the amount collected nor dependent upon failure to exercise diligence in collection which would be required of an agent. It is an obligation measured by the receipts of the vendor and created by the local law."

In the case of In re Rockaway Paint Centre, Inc., 291 N. Y. Supp. 341, a similar question was involved. The insolvent vendor made an assignment for benefit of creditors and the city of New York filed a claim representing taxes due on sales made by the assignor prior to the assignment and claimed priority. Again the assignee contended the assignor acted as the city's agent in collecting the taxes and upon collection the moneys lost their identity as tax funds and became an ordinary debt owing from the assignor, as agent, to the city as principal. The same sales tax ordinance was involved as in the Atlas Television Company Case, supra. In this case the Supreme Court, after referring to the same provisions of the ordinance as the Court of Appeals in the Atlas Television Company Case, said:

"It thus appears the tax is imposed not on the vendor or the purchaser, but 'upon receipts from sales'. True, the obligation to pay the tax is placed in the first instance upon the purchaser, but a concurrent obligation is placed upon the vendor to collect it, and, whether he does or does not collect it, a direct and independent obligation is cast upon the vendor to pay it to the city. Once the purchaser pays the tax, whether to the vendor or directly to the city, he is discharged from liability. But until the receipt of the tax by the city, the vendor remains liable for it. The fact that in the event of nonpayment the city has a right to proceed against the purchaser does not diminish the liability of the vendor or change the character of his obligation from that of a tax to a debt. Therefore the moneys due from the assignor are tax funds."

Although the New York City tax ordinance differs from that of this state in some respects, we find no provisions which would make the reasoning of the New York courts, as expressed above, inapplicable to the statute herein.

Likewise the Retail Sales Tax Act of California has been held to be a tax upon the vendor rather than the vendee. De Aryan v. Akers (Cal. App.) 81 P.2d 1028; Western Lithograph Co. v. State (Cal.) 78 P.2d 731; Meyer Const. Co. v. Corbett, 7 Fed. Supp. 616. Because of obvious differences between the California act and that of this state we do not refer to the foregoing discussions as authority for our conclusion herein.

Because of the provisions of the Consumers' Sales Tax Act of 1935, ch. 66, art. 7, S. L. 1935, heretofore discussed, and in accord with the reasoning of the decisions of the New York court in the above-cited cases, we conclude that the moneys due from the insolvent vendor are taxes and not merely an ordinary debt owing from him as agent to the state of Oklahoma as principal.

The assignee herein relies upon the following cases: Matter of Lazaroff, supra; Nolte v. Hudson Nav. Co. (C. C. A.) 8 F.2d 859; Commonwealth of Pennsylvania v. York Silk Mfg. Co., 192 F. 81; and In re Wyoming Valley Ice Co. (D. C.) 145 F. 267. The case of Matter of Lazaroff, supra, was reversed on appeal by the United States Supreme Court. See 299 U. S. 522, 57 S. Ct. 321. As pointed out by the New York court in Re Rockaway Paint Centre, supra, the other cases cited above are not applicable to the case at bar.

The next question for consideration is whether the state's claim for delinquent sales tax against an insolvent vendor, who made an assignment for benefit of creditors subsequent to the accrual of said tax, is entitled to priority over the claims of general creditors.

This court has never passed upon this exact question, although in the case of Gray v. Logan County, 7 Okla. 321, 54 P. 485, the Supreme Court of the Territory of Oklahoma quoted with approval the following statement from the opinion in the case of Greeley v. Provident Bank, 98 Mo. 458:

"The amount of the taxes was undisputed and the receiver had in his hands funds sufficient to pay it, and we think the order should have been made. It may be conceded that the state did not have an express lien upon the assets that went into the hands of the receiver, but it had a right paramount to other creditors to be paid out of those assets—a right which it could have enforced through its revenue officers by summary process of distress, but for the fact that the property and assets of its debtor had passed into the custody of its courts, whose duty it was, in the administration and distribution of those assets, to respect that paramount right upon the untrammeled exercise of which depends the power to protect the very funds being distributed, and to maintain the existence of the tribunal engaged in distributing it, and to make no order for the distribution of assets in custodia legis except in subordination to that right."

This is not necessarily conclusive in the case at bar, but it does disclose that the Territorial Supreme Court has heretofore recognized the fundamental principles involved in the instant case. Furthermore, in Board of County Com'rs v. State, 125 Okla. 287, 257 P. 778, this court stated that the right to levy and collect taxes is an inherent attribute of the sovereign state. The prerogative of priority of the state's claim for taxes against an insolvent over the claims of said insolvent's general creditors is predicated upon that fundamental inherent power. The general rule is expressed in 26 R. C. L. 390, as follows:

"Taxes have always been regarded as preferred claims and such priority is one of the prerogatives of the sovereign power. This priority extends to taxes due to counties and municipal corporations as well as to the state itself. This right of priority does not, however, in itself constitute a lien on the property of the person assessed, although the state has a right in the nature of an equitable lien on the property of a taxpayer which has been assigned for the benefit of creditors."

In 5 C. J. 1288, is the following language:

"The claim of the state for taxes is secured by an equitable lien which is paramount to an assignment for the benefit of creditors. * * *"

It has been pointed out in the cases involving the question of the priority of a state's claim for taxes against an insolvent taxpayer that a tax is not to be regarded as an ordinary debt, but is an obligation which by its very nature is to be regarded as paramount to all other demands against the taxpayer, although the law imposing the tax does not in express terms declare such priority. These cases are based upon the proposition that the maintenance of the government and the public welfare are so dependent upon the collection of taxes that demands of such a nature should take precedence over all other claims. State of Minnesota v. Central Trust Co., 94 Fed. 244; Jack v. Weinnett (Ill.) 3 N. E. 445; Dunlap v. Gallatin County, 15 Ill. 7; 31 Mich. Law Rev. 970; State of Missouri v. Rowse, 49 Mo. 586; Re Assignment of Riddell (Wis.) 67 N. W. 1135; Marshall v. New York, 65 L. Ed. (U. S.) 315; In re Rockaway Paint Centre, Inc., supra; In re Television Co., Inc., supra; Liberty Mut. Ins. Co. v. Johnson Shipyards Co. (C. C. A.) 6 Fed.2d 752; People v. Herbert's of Los Angeles, Inc., (Cal. App.) 39 P.2d 829. For general discussion of sovereign prerogative of priority see annotations in 51 A. L. R. 1355, and 90 A. L. R. 184.

In State of Missouri v. Rowse, supra, which has been recognized as a leading case upon this question and cited by many other jurisdictions, the Supreme Court of Missouri was considering a situation similar to that in the case at bar and said:

"It is admitted that the state has no express lien by statute upon the personal property for taxes assessed against its owner on account of such property. By the common law all debts due the crown were preferred to claim of private citizens. So far as taxes are concerned, every consideration requires that this rule be rigidly observed. The liability for them is not an ordinary one, and cannot be likened to a common debt. Their collection is vital to the enforcement of the law and the very existence of government, and I know of no authority that places the obligation to pay them upon a level with liabilities upon contracts. If the claim of the state were an ordinary one, such as might arise on behalf of an individual, the authorities cited might show that its priority was lost by the assignment, but the obligation to pay taxes can never be so considered, although there may be no express statutory provision upon the subject.

"It is true the act concerning assignments does not. like that concerning administration, provide such preferences, and for the reason that it does not, like the latter act, undertake to classify the liabilities, but uses the general term 'according to their right,' in directing the payment of demands. * * * Had the statute, as in the administration act, classified the demand and omitted to give priority to taxes it would give color to the claim that the state intended to place this liability upon a level with others. But the omission to make any classification can receive no such construction."

The Court of Appeals of New York in Re Television Co., supra, held that although no statute expressly provided priority in favor of the state or governmental agency of the state in the payment of delinquent sales tax due from an insolvent vendor who had made an assignment for benefit of creditors, the state as the sovereign power has a preference over the general creditors of the insolvent. The Supreme Court of that state reached the same conclusion in Re Rockaway Paint Centre, Inc., supra.

The above authorities likewise sustain the conclusion that the state's claim for taxes herein is not defeated by an assignment for benefit of creditors by the insolvent taxpayer. It is not necessary that we express any opinion as to the priority of the state's claim for an ordinary debt, since there is a recognized distinction between an ordinary debt and taxes owed the state. Missouri v. Rowse, supra; Barbee v. Cowden, 182 Okla. 334, 77 P.2d 669; 61 C. J. 70; 26 R. C. L. 25. Also cases cited above.

Nor can we agree with the proposition that by enacting the statute upon assignment for benefit of creditors, section 10026, O. S. 1931, this inherent prerogative of sovereignty has been waived by the state. To reach that conclusion it would be necessary that we hold the Legislature intended by inference to include the state within the meaning of the word "creditor." Such a conclusion would be contrary to the established general rule as expressed by the Supreme Court of the United States in the case of United States v. Herron, 20 Wall. 251, 22 L. Ed. 275, where, in construing the use of the word "creditor" in the bankruptcy law, it is said:

"It is a maxim of the common law, said Savage, Ch. J., that when an Act of Parliament is passed for the public good, as for the advancement of religion and justice, or to prevent injury and wrong, the King shall be bound by such act, though not named, but when a statute is general and any prerogative, right, title or interest would be divested or taken from the king, in such a case he shall not be. bound unless the statute is made by express words to extend to him, for which he cites both English and American authorities, and adds, that the people of the state being sovereign, have succeeded to the rights of the former sovereign, and that the people of the state are not bound by the general words in the Insolvent Law. People v. Herkimer, 4 Cow. 348; See, also, Com. v. Hutchinson, 10 Pa. 456, which is to the same effect; Hilliard, Bank. (2d Ed. 295.)

"Sanctioned as that principle is by two express decisions of this court, it would seem that further discussion of it is unnecessary, as it has never been questioned by any well-considered case, state or federal, and is founded in the presumption that the Legislature, if they intended to divest the sovereign power of any right, privilege, title or interest. would say so in express words; and where the act contains no words to express such an intent, that it will be presumed that the intent does not exist. United States v. Knight, 14 Pet. 315; Bk. v. United States, decided at the present term (ante); United States v. Hoar, 2 Mass. 311; Com. v. Baldwin, 1 Watts, 54."

See. also, note to People v. Herkimer. 15 Am. Dec. 379; and Morris v. State, 88 Okla. 189, 212 P. 588.

The appellant herein also relies upon the case of Barbee v. Cowden, 182 Okla. 334, 77 P.2d 669. In that case this court held that an assignment of personal property for benefit of creditors constitutes a sale within the meaning of section 12590, O. S. 1931, and the lien upon personal property for delinquent personal taxes provided by said section is limited to the taxes for the year in which the sale is made. The court recognized the fact that section 12590, O. S. 1931, limits the lien for delinquent personal taxes where a person sells all of his personal property to one person after the property had been assessed but before the tax has been paid, and fails to retain sufficient to pay the tax, for the year in which the sale is made.

By virtue of said section 12590, O. S. 1931, the state has placed a restriction upon its inherent sovereign power to levy and collect taxes. The Consumers' Tax Law of 1935, ch. 66, art. 7, S. L. 1935, which is in question in the instant case, does not limit or restrict this power. Nor is the state restricted to any exclusive method of enforcing the sales tax, but in addition to certain specific remedies may avail itself of any remedy for collecting the tax which is available for the enforcement of an action for debt.

The judgment of the trial court is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur.